IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**RWP ASSOCIATES, LLC,**
**d/b/a PRICE ASSOCIATES, P.A.**                                              **PLAINTIFF**

V.                              **CASE NO. 5:22-CV-05117**

**WORLD TECH TOYS, INC.**
**and John Does 1–10**                                                       **DEFENDANTS**

### OPINION AND ORDER

This is a breach of contract case filed by Plaintiff RWP Associates against Defendant World Tech Toys ("WTT"). WTT removed this case from the Circuit Court of Washington County based on diversity of citizenship of the parties. Currently before the Court is WTT's Motion to Dismiss Based Upon Lack of Personal Jurisdiction (Doc. 9) under Federal Rule of Civil Procedure 12(b)(2). WTT filed a Brief (Doc. 9-1) and Request for Judicial Notice (Doc. 10) in support of its Motion, RWP filed a Response in Opposition (Doc. 19), and WTT filed a Reply (Doc. 20).

As for evidence, WTT submitted an affidavit from its CEO, Kev Kouyoumjian (Doc. 9-2), and requests the Court take judicial notice of WTT's Articles of Incorporation and other documents showing the home states of WTT and other corporations mentioned in the Complaint (Doc. 4). RWP submitted an affidavit from its manager, Robert Price (Doc. 19-1), along with 1099 tax forms, emails, contracts, and sales summaries. The Court also permitted the parties to engage in limited jurisdictional discovery. *See* Doc. 23. RWP served a set of requests for admission on WTT, and, at the Court's direction, RWP filed WTT's responses on the docket, *see* Doc. 28-2. The Court heard oral argument on the Motion on September 7, 2022.

1

According to RWP's Complaint, WTT engaged RWP as a sales representative from 2008 to 2020. The parties allegedly agreed that RWP would sell WTT's toys to retailers around the world and receive a commission for each sale. The Complaint references specific sales RWP arranged to Macy's and to retailers at the Hong Kong Toys and Games Fair. According to RWP, its efforts have generated more than $50,000,000 in sales for WTT since 2015. WTT allegedly terminated the parties' contract in August 2020 and has refused to pay RWP any commissions for work done in 2020 and has made only partial commission payments for work done from July 2017 through 2019. RWP brings claims for breach of contract, promissory estoppel, and unjust enrichment.

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988)). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Wells Dairy*, 607 F.3d at 518 (quoting *Block Indus. v. DHJ Indus.*, 495 F.2d 256, 260 (8th Cir.1974)).

The Arkansas long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101. Therefore, the issue here is whether the exercise of personal jurisdiction over WWT is constitutionally permissible. The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard "presaged the development of two categories of personal jurisdiction:" general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). When the defendant is a corporation, the Due Process Clause permits general jurisdiction over it only when its "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *See id.* (internal quotation marks omitted). "The place of incorporation and principal place of business" are the "paradigm bases for general jurisdiction" over a corporation. *Daimler*, 571 U.S. at 137 (cleaned up).

The Court cannot exercise general jurisdiction over WTT. WTT is incorporated and maintains its principal place of business in California. While WTT sells its products to Arkansas retailers, WTT's relationship with Arkansas is insufficiently continuous and systematic to render WTT "essentially at home in" Arkansas. *Goodyear*, 564 U.S. at 919.

The Court turns to specific jurisdiction, where the inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571

3

U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The Eighth Circuit has crafted a five-part test to help district courts determine whether a defendant has minimum contacts with the forum such that filing suit there will not offend traditional notions of fair play and substantial justice. The factors are: (i) the nature and quality of contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a forum for its residents; and (v) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The last two factors are not as important as the first three. *Id.*

WTT argues its contacts with Arkansas are merely "[i]ndirect and nominal." (Doc. 9-1, p. 7). WTT focuses on the lack of allegations in the Complaint related to Arkansas. It argues the Complaint contains "no allegations of WTT engaging in any activities to directly influence and/or impact the Arkansas market and/or general business environment." *Id.* WTT also argues that it "has no offices, employees, agents, physical property, bank accounts, and/or assets in Arkansas." *Id.* at 8. WTT contends "the number of contacts between WTT and Arkansas are few in nature and based solely on WTT's interactions with Plaintiff." (Doc. 9-1, p. 9).

RWP counters that the Complaint's references to "global markets" and "around the globe" show that RWP's claims include WTT's contacts with Arkansas. Robert Price attests that RWP "substantially assisted in connecting [WTT], specifically its CEO Kev Kouyoumjian, with retailers, headquartered in the State of Arkansas, including but not limited to, Wal-Mart, Inc., Sam's, Inc., and Dillards, Inc.," and that RWP has met with WTT's CEO in-person in Arkansas at least three times to facilitate WTT's sales to

Arkansas retailers. (Doc. 19-1, ¶¶ 5–6). RWP argues that WTT has made at least five million dollars in sales to Arkansas companies over a five-year period.

RWP has made a prima facie showing that WTT is subject to specific personal jurisdiction in Arkansas. Notwithstanding its contentions in its opening brief, WTT now admits that it has a business relationship with Arkansas-based retailers, including Walmart; has sent its corporate representatives to Arkansas to meet with Walmart; and advertises and sells its products to Arkansas-based retailers. *See* Doc. 28-2, pp. 6–14. WTT's concessions, along with other evidence submitted by RWP, indicate WTT has intentionally directed a considerable amount of products to Arkansas retailers. These sales "arise[] from the efforts of [WTT] to serve directly or indirectly, the market for its product in" Arkansas. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). WTT's use of RWP as a "sales agent in" Arkansas is further evidence WTT directed sales to Arkansas. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987); *see also Allianz Glob. Corp. & Specialty Marine Ins. Co. v. Watts Regul. Co.*, 92 F. Supp. 3d 910, 918 (S.D. Iowa 2015) (finding specific jurisdiction where the defendant "utilized a sales representative with offices in Iowa and had sales totaling several million dollars per year in this state").

The primary issue, then, is to what extent WTT's admitted contacts with Arkansas are related to RWP's claims. WTT argues, based on Mr. Kouyoumjian's declaration, that RWP never facilitated WTT's relationship with Arkansas-based retailers and RWP's present claims are completely unrelated to WTT's contacts with Arkansas. This argument fails for two independent reasons.

5

First, while WTT contends RWP did not assist WTT in making sales to Walmart in Arkansas, WTT admits it "engaged RWP to help WTT set prices for the goods WTT sold to retailers, including Walmart." (Doc. 28-2, p. 15). WTT argues RWP's consulting was merely "back end" support, after WTT's business relationships were already in place. But this distinction is immaterial. Whether RWP consulted on the front end to facilitate WTT's business relationships or consulted after those sales were already arranged, RWP's claim that it has been uncompensated for its consulting services is related to WTT's advertising and sales to Arkansas businesses.

Second, the evidence submitted by RWP indicates it did assist WTT in selling to Walmart and other Arkansas retailers. This evidence conflicts with Mr. Kouyoumjian's declaration, but the Court must resolve this dispute in favor of RWP. *See Digi-Tel Holdings*, 89 F.3d at 522. Robert Price attests that RWP facilitated WTT's business relationships in Arkansas, including through in-person meetings, and RWP has attached documents corroborating Price's statements. Emails show WTT's CEO Mr. Kouyoumjian scheduled an in-person meeting in Arkansas with Wal-Mart. *See* Docs. 19-3, 19-4, 19-5. One email shows Jerrell Drake, an RWP employee, sending Mr. Kouyoumjian a confirmation of the meeting's date and time. Also included in the emails was Harold Price, another RWP employee. Both Mr. Drake and Harold Price use WTT email addresses, suggesting they were given these email addresses to use in their capacity as sales representatives for WTT. RWP also provides a supplier agreement between WTT and Walmart. *See* Doc. 19-6. The agreement lists Mr. Drake as WTT's account contact. These

documents refute WTT's contention that RWP played no role in facilitating WTT's relationships with Arkansas retailers.[1]

Finally, the Court considers Arkansas's interest in providing a forum for its residents and the convenience of the parties. *See Land–O–Nod Co.*, 708 F.2d at 1340. The Court finds Arkansas has a substantial interest in providing a forum for disputes between out-of-state companies engaging Arkansas companies as sales agents in Arkansas, and WTT—given its CEO's visits to Arkansas and prior consent to personal jurisdiction in Arkansas in contracts with Arkansas retailers—would not be unduly inconvenienced by litigating in this forum.

For these reasons, WTT's Motion to Dismiss Based Upon Lack of Personal Jurisdiction (Doc. 9) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this _20th_ day of September, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] WTT makes a litany of admissibility objections to the evidence submitted by RWP. While some courts apply an admissibility standard to jurisdictional evidence, *see Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015), the Eighth Circuit has announced no such rule, *NPS Sys., Inc. v. MyStateUSA, Inc.*, 2010 WL 3153212, at *2 n.1 (E.D. Mo. Aug. 9, 2010). In fact, the Eighth Circuit has explained that "[t]he evidentiary showing required at the prima facie stage is minimal." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)). Robert Price's statements, the emails, and the supplier agreement appear to be admissible were RWP given the opportunity to introduce them at an evidentiary hearing. WTT's objections are **OVERRRULED**.